Not Reported in F.Supp.2d, 2007 WL 4299992 (N.D.N.Y.)

(Cite as: 2007 WL 4299992 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Edward KOEHL, Plaintiff,
v.
Gary GREENE, Superintendent; Glenn Goord
Commissioner; Howard Silverberg, Facility Doctor; and
Julie Daniel, IGRC Supervisor, Great Meadow
Correctional Facility, Defendants.
No. 9:06-CV-0478 (LEK/GHL).

Dec. 6, 2007.
Edward Koehl, Dannemora, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Michael G. McCartin, Esq., Stephen M.
Kerwin, Esq., Assistant Attorneys General, Albany, NY,
for Defendants.

## ORDER

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** Currently before the Court in this prisoner civil
rights action are four submissions recently filed by
Plaintiff: (1) an opposition to Defendants' motion to take
his deposition (Dkt.Nos.44, 47, 50); (2) a motion for an
order permitting Plaintiff to take the depositions of
Defendants at the time and place, and in the manner,
specified by Plaintiff (Dkt.Nos.45, 47, 50); (3) a motion
for a Court conference (Dkt.Nos.48, 50); and (4) a motion
to appoint counsel (Dkt.Nos.49, 50). For the reasons set
forth below, the Court withdraws its prior Order with
regard to Defendants' motion to take Plaintiff's deposition,
and issues a new such Order. Furthermore, the Court
denies each of Plaintiff's three motions. Finally, the Court
cautions Plaintiff regarding the abusive language
contained in some of his recent submissions.

## I. OPPOSITION TO DEFENDANTS' MOTION TO
## TAKE PLAINTIFF'S DEPOSITION

On October 2, 2007, Defendants requested an Order
authorizing them to take Plaintiff's deposition. (Dkt. No.
41.) On October 4, 2007, the Court filed an Order granting
that request. (Dkt. No. 43.) On October 6, 2007, Plaintiff
sent to the Court his opposition to Defendants' motion.
(Dkt. No. 44.) That opposition was filed on October 11,
2007. (*Id.*) Because I filed my Order granting Defendants'
(rather routine) motion on October 4, 2007, without the
benefit of having Plaintiff's opposition thereto, I hereby
analyze Defendants' request anew, and amend my Order of
October 4, 2007 accordingly.

In his opposition to Defendants' motion, Plaintiff
asserts that he "does not object to defendants deposing
him per se ... [but] objects to the unnamed facility where
the deposition[ ] will take place, the presence of security
teams during the deposition[,] and the empowering of
DOCS security personnel to dictate the terms and
conditions of said deposition[ ]." (Dkt. No. 44, ¶ 3.) In
particular, Plaintiff objects to the possibility that he will be
moved a considerable distance for the deposition merely
"as a means of harassment and retaliation." (*Id.* at ¶ 3.) In
addition, he objects to having prison security personnel
present in the room during his deposition, where they may
(1) order him to answer deposition questions under
penalty of being issued a misbehavior report if he does not
do so, and (2) overhear Plaintiff's testimony regarding his
confidential medical condition. (*Id.* at ¶¶ 5-6 .) In support
of these objections, he offers sworn testimony about his
past experiences being deposed in prisoner civil rights
actions against DOCS employees. (*Id.* at ¶¶ 4-5.)

In reply, Defendants argue that (1) the reason for of
DOCS' non-disclosure of the location of the deposition is
to maintain security, (2) the reason for the presence of
security personnel in the room during Plaintiff's deposition
is also to maintain security, particularly the security of the
court reporter, and (3) Plaintiff's confidentiality argument
fails because has placed his alleged medical condition at
issue in this action, and in any event the allegedly
confidential information in question would come out in
open Court anyway should this matter proceed to trial.
(Dkt. No. 46.)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4299992 (N.D.N.Y.)

(Cite as: 2007 WL 4299992 (N.D.N.Y.))

**\*2** In two sur-replies, Plaintiff argues, *inter alia,* that (1) the place for the deposition that is geographically most convenient to the parties is Great Meadow C.F., (2) should a trial occur in this matter, it may be held "under seal," and (3) at the very least, the Court should order that Plaintiff not be deposed on February 6, 2008, since he is scheduled to be deposed on that date in an unrelated matter pending in New York State Supreme Court, Kings County. (Dkt. No. 47, 50.)

Plaintiff has now been afforded all the process to which he is due with regard to Defendants' motion. After carefully reviewing all of the motion papers with respect to Plaintiff's deposition, I see no reason to disturb my previous Order except to make the following amendments to it: (1) *defense counsel is directed to accommodate Plaintiff's request to not depose him on February 6, 2008, since he is apparently scheduled to be deposed on that date in an unrelated matter pending in New York State Supreme Court, Kings County; (2) defense counsel is directed to, in selecting a place for Plaintiff's deposition, make an effort to select a DOCS Correctional Facility that is within a reasonable distance of the facility in which Plaintiff is housed, such "reasonable distance" to be determined, in part, based on Departmental needs and availability; and (3) Plaintiff's disagreement with the time and/or place of his depositions is not a basis for refusing to go forward with the deposition.*

I issue this ruling largely for the reasons stated by Defendants in their motion papers. (*See generally* Dkt. No. 46.) I would only add three points. First, with respect to the location of the deposition, such information will necessarily be required in the Notice of Deposition, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure. Thus, pursuant to this Court's Order filed on October 4, 2007, Plaintiff will be advised of the location "at least 14 days prior to the scheduled day for his deposition .... " (Dkt. No. 43.)

Second, with respect to the presence of security personnel in the room during Plaintiff's deposition, the facility where Plaintiff will be deposed determines the level of security necessary to protect the facility as well as all persons involved in the taking of the deposition. This Court will not second-guess such determinations based

upon Plaintiff's assertions. Of course, with respect to the answering of specific questions at the deposition, the Court does not relinquish its authority to oversee the conduct of this case, including the discovery. Thus, while the correctional facility may control the physical environment of the deposition, any dispute with respect to the propriety of a question, or a party's obligation to answer same, rests *solely* with this Court. I am confident that defense counsel understands this fact and the permissible use of security personnel at the deposition. (*See* Dkt. No. 41, ¶¶ 6-8 [McCartin Decl., requesting an order directing that Plaintiff may not refuse to answer questions due to a mere "disagreement with directives of security staff" regarding "security precautions," and stating, "[o]f course, such an order would not require the plaintiff to answer every single question; valid objections in good faith are always permissible."].)

**\*3** Finally, with respect to the asserted confidentiality of Plaintiff's medical condition,[FN1] Plaintiff has, in this action, asserted claims for damage to his health due to Defendants' alleged deliberate indifference. (Dkt. No. 1.) By asserting such claims, Plaintiff has, indeed, put his medical condition in question, and defendants are entitled to explore same with Plaintiff in his deposition, as well as in written discovery. Thus, his argument regarding privilege or confidentiality fails.

> FN1. This action alleges violations of Plaintiff's Eighth Amendment rights based upon his exposure to second hand tobacco smoke in three different correctional facilities between May 1992 and November 2006. (*See* Dkt. No. 1.)

## II. MOTION TO TAKE DEFENDANTS' DEPOSITIONS

Plaintiff requests an Order directing that (1) Defendants submit to depositions conducted by Plaintiff, and answer all of Plaintiff's questions, except those questions regarding which they have, in good faith, made valid objections, (2) Defendants provide a room in a DOCS correctional facility near Plaintiff (preferably Great Meadow C .F.) during regular business hours, at which the depositions may occur, and (3) Defendants provide the means by which the depositions may be recorded, such as

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4299992 (N.D.N.Y.)

(Cite as: 2007 WL 4299992 (N.D.N.Y.))

a stenographer, an ordinary tape recorder, or the recording device used in DOCS disciplinary hearings. (*See, e.g.,* Dkt. No. 45, Part 1, ¶¶ 4, 7-9; Dkt. No. 47, at 1.)

As an initial matter, I note that Plaintiff ignores the cost associated with ensuring that the depositions are taken before a person authorized to administer oaths and take testimony.[FN2] Moreover, Plaintiff ignores the chain-of-custody issues that would arise were he permitted to store, in his possession, the cassette tape onto which the depositions were recorded. Finally, Plaintiff ignores the cost of a permissible transcription of any such audio tape. In any event, even if Plaintiff had addressed these issues, his request would still lack merit because he has not shown cause for an order shifting the cost of taking several depositions from him to Defendants (or the Court).[FN3]

> FN2. *See* Fed.R.Civ.P. 28(a), 30(b)(4).

> FN3. *See* Fed.R.Civ.P. 30(b)(2) ("Unless the Court orders otherwise, ... the party taking the deposition shall bear the cost of the recording.").

Implicit in Plaintiff's motion is an argument that he should be excused from the requirements of having to pay the costs of the depositions because he is impoverished. This argument is without merit. Although Plaintiff has been granted *in forma pauperis* status under 28 U.S.C. § 1915, such status does not relieve him of the duty to pay his share of the cost of discovery (or somehow shift that cost to either Defendants or the Court). Rather, being granted *in forma pauperis* status affords an inmate only certain benefits, namely, the right to be able to "proceed" in a matter without *prepaying* certain "fees and costs."[FN4] These "fees and costs" do not include the costs of taking part in discovery. For example, a litigant proceeding *in forma pauperis* does not have a right to a waiver of (1) the cost of a deposition stenographer,[FN5] (2) the daily attendance fee and mileage allowance that must be presented to an opposing witness under Rule 45 of the Federal Rules of Civil Procedure,[FN6] or (3) the copying cost of any deposition transcripts.[FN7]

> FN4. *See* 28 U.S.C. § 1915.

> FN5. *See Benitez v. Choinski,* 05-CV-0633, 2006 WL 276975, at *2 (D.Conn. Feb. 2, 2006);

*Tajeddini v. Gluch,* 942 F.Supp. 772, 782 (D.Conn.1996); *Doe v. U.S.,* 112 F.R.D. 183, 185 (S.D.N.Y.1986); *Toliver v. Community Action Com. to Help Economy, Inc.,* 613 F.Supp. 1070, 1072 (S.D.N.Y.1985), *aff'd without opinion,* 800 F.2d 1128 (2d Cir.1986), *cert. denied,* 479 U.S. 863 (1986); *Ebenhart v. Power,* 309 F.Supp. 660, 661 (S.D.N.Y.1969).

> FN6. *See* 28 U.S.C.1915(d) ("Witnesses shall attend as in other cases ...."); N.D.N.Y. L.R. 5.4(a) ("The granting of an *in forma pauperis* application shall in no way relieve the party of the obligation to pay all other fees for which such party is responsible regarding such action, including, but not limited to, copying and/or witness fees."); *Malik v. Lavalley,* 994 F.2d 90, 90 (2d Cir.1993) (affirming dismissal of complaint by Di Bianco, M.J., N.D.N.Y.); *Milton v. Buffalo Eng'g, P.C.,* 03-CV-0472, 2004 WL 1179336, at *1 (W.D.N.Y. May 27, 2004); *Fridman v. City of New York,* 195 F.Supp.2d 534, 535 (S.D.N.Y.2002); *Espinal v. Coughlin,* 98-CV-2579, 1999 WL 1063186, at *2 (S.D.N.Y. Nov. 23, 1999); *Smith v. Gracie Square Hosp.,* 96-CV-1327, 1997 WL 698183, at *2 (S.D.N.Y. Nov. 10, 1997); *Malsh v. Police Dep't of City of N .Y.,* 92-CV-2973, 1995 WL 296735, at *1 (S.D.N.Y. May 16, 1995); *Toliver v. Community Action Com. to Help Economy, Inc.,* 613 F.Supp. 1070, 1072 (S.D.N.Y.1985), *aff'd without opinion,* 800 F.2d 1128 (2d Cir.1986), *cert. denied,* 479 U.S. 863 (1986); *Gonzalez v. Fenner,* 128 F.R.D. 606, 607-608 (S.D.N.Y.1989); *see also* Dkt. No. 6, n. 1 (Order granting Plaintiff *in forma pauperis* status, but noting that Plaintiff is "still required to pay fees that he may incur in this action, including copying and/or witness fees").

> FN7. *See* N.D.N.Y. L.R. 5.4(a) ("The granting of an *in forma pauperis* application shall in no way relieve the party of the obligation to pay all other fees for which such party is responsible regarding such action, including, but not limited to, copying and/or witness fees."); *Smith v.*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4299992 (N.D.N.Y.)

(Cite as: 2007 WL 4299992 (N.D.N.Y.))

*Buffalo Bd. of Educ.,* 96-CV-0229, 1997 WL 613255, at \*2 (W.D.N.Y. Oct. 2, 1997); *see also* Dkt. No. 6, n. 1 (Order granting Plaintiff *in forma pauperis* status, but noting that Plaintiff is "still required to pay fees that he may incur in this action, including copying and/or witness fees").

**\*4** This is precisely why, in the case of *Murray v. Palmer,* I required the prisoner-plaintiff to bear the cost of hiring a certified court reporter (or its functional equivalent) at the depositions that he requested. *Murray v. Palmer,* 03-CV-1010, 2006 WL 2516485, at \*3-4 (N.D.N.Y. Aug. 29, 2006). It is also presumably why Visiting Senior United States District Judge Lyle E. Strom, in the unpublished Order of April 17, 2007, provided by Defendants, required a prisoner-plaintiff to pay, *inter alia,* the cost of hiring a certified court reporter for the depositions he requested. (Dkt. No. 46, Part 2.)

Simply stated, I am not going to require Defendants to bear the cost of a court reporter (or, in the alternative, a person authorized to administer oaths, an audio recording device, and a transcription of an audio recording of the deposition) at Plaintiff's depositions under the circumstances.

I note that Rule 30(a)(2) of the Federal Rules of Civil Procedure permits Plaintiff to conduct the depositions of Defendants without leave of the Court, a fact that is recognized by Defendants. (Dkt. No. 46, Part 1, at 1.) Furthermore, even if Plaintiff indeed lacks the funds necessary to hire a certified court reporter for the depositions he would like to take,[FN9] he has several other discovery tools at his disposal (with which he is no doubt familiar, given his extensive litigation experience), including (1) conducting depositions upon written questions pursuant to Rule 31, (2) serving interrogatories pursuant to Rule 33, (3) serving document requests pursuant to Rule 34, and (4) serving requests for admissions pursuant to Rule 36. Indeed, it appears that "[t]he preference in the [Southern] District [of New York] in pro se prisoner actions is for interrogatories rather than depositions of defendants." *Boomer v. Grant,* 00-CV-4709, 2001 WL 1580237, at \*1 (S.D.N.Y. Dec. 12, 2001) [collecting cases]. This would appear to me to

be an eminently sensible policy to adopt in our District.

[FN8.] I am taking Plaintiff at his word that no longer has the funds necessary to hire a certified court reporter for the depositions he would like to take (*see* Dkt. No. 2, ¶ 4; Dkt. No. 38, ¶ 5), despite the considerable settlement amounts he received from previous prisoner civil rights actions. *See Koehl v. Rowe,* 96-CV-1001 (E.D.N.Y.) (prisoner civil rights action, settled on or about 6/13/02 for payment to Plaintiff of $35,000 plus $7,419.41 in expenses); *Koehl v. Dalsheim,* 94-CV-3351 (S.D.N.Y.) (prisoner civil rights action, settled on or about 5/20/99 for payment to Plaintiff of $25,000).

Plaintiff is reminded that the discovery period in this action closes on February 29, 2008. (Dkt. No. 40, at 1.)

### III. MOTION FOR COURT CONFERENCE

Plaintiff requests a Court conference in order to (1) obtain clarification from the Court regarding "the parameters of the Court's Scheduling Order" of October 1, 2006, and "the steps he must go through to accomplish abiding by said Order," and (2) resolve a discovery dispute with Defendants regarding their "illegal possession of his personal and confidential records [while] at the same time precluding Plaintiff from having access to his own personal records." (Dkt.Nos.48, 50). This request is denied without prejudice for several reasons.

First, as was stated in the Court's denial of Plaintiff's previous request for a Court conference, his discovery dispute with Defendants is not yet ripe for adjudication by the Court since neither he nor Defendants have filed a motion to compel or preclude production of the confidential records to which he refers. (Dkt.Nos.24, 35.) Indeed, Plaintiff has not even certified that he engaged in a good-faith effort with Defendants to resolve or reduce the asserted discovery dispute(s), as required by Local Rule 7.1(b) (2), (d).

**\*5** Second, to the extent Plaintiff requests clarification from the Court regarding the meaning of the Court's Scheduling Order of October 1, 2006, he may, under the circumstances, submit his requests for clarification in a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4299992 (N.D.N.Y.)

(Cite as: 2007 WL 4299992 (N.D.N.Y.))

letter to the Court (with a copy to opposing counsel), although he is cautioned that no one at the Court or Clerk's Office can, or will, provide him with legal advice. Plaintiff is directed, in that letter, to expressly refer to this Order, so that the Clerk's Office is aware of the permissibility of the filing of such a letter.

## IV. MOTION TO APPOINT COUNSEL

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392-93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. Among these factors are:

The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[FN9] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (citing *Hodge,* 802 F.2d at 61).

FN9. For example, I note that a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

Here, after carefully reviewing the file in this action, I find that (1) it appears as though, to date, Plaintiff has been able to effectively litigate this action,[FN10] (2) it appears that the case does not present issues that are novel or more complex than those raised in most prisoner civil rights actions, (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial (as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants), [FN11] *it is highly probable that this Court will appoint trial counsel at the final pretrial conference* (should this case survive the filing of any dispositive motions), and (4) I am unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

FN10. I note that Plaintiff's filings in this action have been quite good, always being clear, organized and cogent, and almost always being typed and supported by exhibits and/or declarations. (*See* Dkt. Nos. 1, 2, 3, 15, 16, 20, 29, 31, 34, 36, 38, 44, 45, 47-50.) As a result, some of Plaintiff's requests have been granted by the Court. (*See* Dkt. Nos. 6, 15.)

FN11. I note that, again, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez,* 899 F.Supp. at 974.

As a result, Plaintiff's motion for counsel is denied.

## V. PLAINTIFF'S RECENT ABUSIVENESS

It bears mentioning in this Order that Plaintiff's extraordinary litigiousness, discussed in a previous Report-Recommendation in this action, [FN12] has recently spiked (causing him to file three motions, a response, and two replies in a period of about two months), [FN13] and indeed has grown into abusiveness. For example, in two recent submissions, he refers to the Court as "cowardly," "[f]ascist," and "twisted." (*See* Dkt. No. 47, at 2; Dkt. No. 50, at 1.) While the Court is certainly sympathetic with the stress and frustrations that accompany the litigation process, Plaintiff is advised that such language is never tolerable-by either counsel or *pro se* litigants. Plaintiff is cautioned that he will be sanctioned for any such future abusiveness, including the striking of any submission containing such abusive language.

FN12. (Dkt. No. 37, at 8-15 [Report-Recommendation of Lowe, M.J.], *adopted on de novo review,* Dkt. No. 39 [Order of Kahn, J.].)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4299992 (N.D.N.Y.)

(Cite as: 2007 WL 4299992 (N.D.N.Y.))

FN13. (*See* Dkt. Nos. 44, 45, 47-50.)

**\*6** I note that the source of Plaintiff's abusiveness appears to be partly impatience at having his motions decided, and partly the revocation of his special solicitude in my prior Report-Recommendation. Plaintiff is advised that none of the decisions reached in this Order were the result of the Court's prior revocation of his special solicitude as a *pro se* civil rights litigant, due to his litigiousness. However, even if the decisions reached in this Order had been the result of that revocation, Plaintiff would not be subjected to any sort of disadvantage, only the level playing field that justice requires due to his extraordinary litigation experience.

Finally, I note that, in his Objections to my previous Report-Recommendation, Plaintiff complained that he did not have access to unreported decisions revoking the special status of an overly litigious *pro se* litigant, and that, in any event, he was represented by counsel in several of his previous cases. (Dkt. No. 38, ¶¶ 1-4.) Plaintiff is respectfully referred to four reported decisions cited in my Report-Recommendation: (1) *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); (2) *Davidson v. Dean,* 204 F.R.D. 251, 257 & n. 5 (S.D.N.Y.2001); (3) *Santiago v. C.O. Campisi,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000); and (4) *Raitport v. Chem. Bank,* 74 F.R.D. 128, 133 (S.D.N.Y.1977). Plaintiff is also advised that, in the case of Mr. Davidson, a careful review of the United States Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, of the cases that Mr. Davidson had filed by August of 1994 (when the Second Circuit issued its decision in *Davidson v. Flynn* ), he had been represented by counsel in more than one-quarter of them.[FN14] As a result, prior representation by counsel is not a determinative factor in deciding whether or not to treat an extremely experienced *pro se* litigant the same as any other litigant.

FN14. Specifically, Plaintiff was represented by counsel in the following cases: *Davidson v. Scully,* 81-CV-0390 (S.D.N.Y.); *Davidson v. Scully,* 83-CV-2025 (S.D.N.Y.); *Davidson v. Smith,* 84-CV-6954 (S.D.N.Y.); *Davidson v. Flynn,* 86-CV-0316 (N .D.N.Y.); *Davidson v.*

*Smith,* 87-CV-1342 (W.D.N.Y.); *Davidson v. Wilmot,* 88-CV-0026 (W.D.N.Y.); *Davidson v. Wilmot,* 88-CV-0063 (W.D.N.Y.); *Davidson v. Riley,* 88-CV-1042 (N.D.N.Y.); *Davidson v. Coughlin,* 88-CV-0646 (N.D.N.Y.); *Davidson v. City of New York,* 91-CV-2290 (S.D.N.Y.); *Davidson v. Murray,* 92-CV-0283 (W .D.N.Y.); *Davidson v. Zon,* 94-CV-0184 (W.D.N.Y.).

**ACCORDINGLY,** it is

**ORDERED** that this Court's Order regarding Plaintiff's deposition, filed on October 4, 2007 (Dkt. No. 43), is **AMENDED** as described above in Part I of this Decision; and it is further

**ORDERED** that Plaintiff's motion for an order permitting him to take the depositions of Defendants at the time and place, and in the manner, specified by him (Dkt.Nos.45, 47, 50) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for a Court conference (Dkt.Nos.48, 50) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt.Nos.49, 50) is **DENIED.**

N.D.N.Y.,2007.

Koehl v. Greene
Not Reported in F.Supp.2d, 2007 WL 4299992 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.