# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JOHN H. WHITE,

Plaintiff,

        -v.-                            9:12-CV-1892
                                            (GLS/ATB)

P. WILLIAMS, et al.,

Defendants.

JOHN H. WHITE, Plaintiff Pro Se
KEVIN M. HAYDEN, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

In this civil rights action, plaintiff alleges that, after numerous defendants ignored his requests to be placed in protective custody, defendant Williams incited his cellmate to attack plaintiff in December 2012. Plaintiff also alleges that he was denied proper medical care for the injuries resulting from this attack, as well as an unrelated condition: a painful ganglion cyst that first developed on his right wrist in 2009.[1] (Dkt. No. 1, Complaint ("Compl.") at 6-18). Plaintiff seeks injunctive, declaratory, and substantial monetary relief. (Compl. at 20).

---

[1] The complaint also contained several other claims of medical indifference, verbal harassment, failure to protect, retaliation and property deprivation against correctional officers and medical staff, and sought declaratory and injunctive relief against District Judge Norman Mordue and Magistrate Judge Randolph Treece for their adverse decisions in prior litigation. (Compl.at 6-18). After initial review of the complaint, Judge Sharpe dismissed these additional claims on May 10, 2013. (Dkt. No. 22). As a result of that order, defendants MacWilliams, Garland, Travers, Dishaw, Gokey, King, Lipka, John Does # 2-6, and Judges Mordue and Treece were terminated from the action. (Id. at 29-30). Plaintiff's Eighth Amendment excessive force claim survived as against defendant Williams, and his Eighth Amendment failure to protect claims survived as to defendants Williams, Rock, Zerniak, Debyah, Sisto, Oey, Phillips, Bellnier, Greenizen, Fischer, Uhler, and "Doe Director for Classification and Movement." Plaintiff's denial of medical care claims remained as against defendants Marlow, Mullen, Rushford, John Doe Nurse, and Lashway. (Id. at 30).

There has been extensive motion practice in this case, including multiple unsuccessful motions for injunctive relief filed by plaintiff seeking protective custody. (Dkt. Nos. 6, 12, 18, 34, 59, 74, 80, 116, 117, 131, 181, 190, 214, 241, 276, 282, 328). There have also been several extensions of the discovery deadlines, and the discovery deadline is now closed.[2] (Dkt. No. 200).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 307). Plaintiff has filed a response in opposition to the motion and defendants have filed a reply. (Dkt. Nos. 351-58, 359). This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United States District Judge. For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## I.    Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a

---

[2] The deadline for discovery, excluding plaintiff's deposition, expired on November 5, 2014. (Dkt. No. 200). Plaintiff's previous requests to re-open discovery after that date were denied. (Dkt. Nos. 327, 340). Plaintiff's responsive papers include a request for additional discovery of "all records & directives that are yet to be produced . . . ." (Dkt. No. 351 at 1). This attempt to re-open discovery is also denied.

motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549,

554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## II.    Compliance with Local Rule (L.R.) 7.1

As required under L.R. 7.1, defendants have filed a Statement of Material Facts. (Dkt. No. 307-2). Although plaintiff has labeled some of his papers with the heading, "Statement Pursuant to Rule 7.1 (a)(3)," his response shows no attempt to follow the mandate of L.R. 7.1(a)(3). (Dkt. No. 351-4, 351-8). Under this rule, the opposing party's response to the movant's statement of material facts "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the local rule provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, the

Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted). Solely in deference to plaintiff's pro se status, the court has opted to review the entire summary judgment record, including the video evidence submitted by plaintiff.

### III. Facts

The relevant facts in this case were outlined in Judge Sharpe's decision on initial review of the complaint (Dkt. No. 22) and will be recited herein for clarity and continuity, with additional details drawn from the transcript of plaintiff's March 11, 2015 deposition. (Dkt. No. 307-4, Hayden Decl. Ex. A ("Dep.")).

Plaintiff was confined in a double cell in the special housing unit ("SHU") of the Upstate Correctional Facility ("Upstate").[3] (Compl. at 8). Because he was required to have a cellmate, plaintiff feared that future inmates, particularly those with gang affiliations, would attack him. (*Id.*) On multiple occasions, plaintiff requested that he be placed in protective custody due to alleged threats from inmates throughout the facility, including surrounding cells, who incorrectly believed that he was an informant

---

[3] Plaintiff was transferred to a single-cell SHU unit at Attica Correctional Facility on July 31, 2015. (Dkt. No. 334).

who had voluntarily signed a confession against his co-defendant. (Compl. at 9, Dep. at 18). When Upstate staff investigated these concerns, plaintiff was unable to identify any of the inmates who threatened him, and stated that he did not have any problems with his current cellmate. (Dep. at 22).

On December 20, 2012, plaintiff's cellmate was re-located. After plaintiff expressed concerns about potential violence from a new cellmate, defendant Greenizen told him that he would "contact the watch commander and would not move any inmate into cell with plaintiff." (Compl. at 9). Later that same day, defendant Sisto and an unidentified correctional officer brought Alston, an inmate who had recently arrived at Upstate, to be plaintiff's cellmate. (*Id*.). During the initial introduction with plaintiff, Alston admitted that he was a member of the Bloods gang, and quizzed plaintiff about grievances that he had filed against various correctional officers, including defendant Williams. (Dep. at 76-77). After five or six hours in the cell with Alston, plaintiff used the shower that was located inside the cell. (Dep. at 78). When he exited the shower, Alston attacked plaintiff from behind, slammed him to the floor, and choked him.[4] (Dep. 79). Alston also grabbed plaintiff's buttocks and groin in a manner that plaintiff considered sexual assault. (Dep. at 80-83). The attack ended when plaintiff began to yell and fight back. (Dep. at 85-86). Plaintiff claims that he attempted to tell defendant Sisto during lunch rounds that he and his cellmate had fought, but that defendant Sisto "acted as if I wasn't even talking." (Dep. at 91). Otherwise, plaintiff did not report the

---

[4] In his complaint, plaintiff alleged that the first attack occurred near the cell door after inmate Alston questioned him about his grievances, and that plaintiff used the shower some time later that day without incident. (Compl. at 10).

6

December 20, 2012 attack to any staff.  (Dep. at 90).

Sometime during the night of December 20, 2012 or early morning of December 21, 2012, plaintiff heard defendant Williams come to the cell door and tell Alston "to 'take care of plaintiff tomorrow, not tonight." (Compl. at 11).  Later, during the December 21, 2012 breakfast rounds, Alston hit plaintiff in the right eye, then "began hitting plaintiff multiple times in the face with extreme force." (*Id*.).  Defendant Sisto observed this attack and intervened, by ordering Alston to stand inside the shower area, handcuffing plaintiff and escorting him outside the cell. (*Id*.). After being escorted from the cell, plaintiff claims that he was denied adequate medical treatment for his immediate injuries as well as his complaints of chest pains in the days following the attack. (Compl. at 11-12).

Separate from the events of December 20-21, 2012, plaintiff claims that defendant Lashway, a nurse practitioner at Upstate, refused to provide treatment for a ganglion cyst on plaintiff's right wrist despite repeated complaints made over a more than two year period.  (Compl. at 6).  Defendant Lashway told plaintiff that once he could no longer write, "that's when he 'may' receive treatment." (*Id.*).  The complaint also accuses defendant Lashway of kicking plaintiff out of her medical office in the latter part of 2012, and informing him that "the more plaintiff write up [sic] medical staff . . . for alleged medical deprivation no treatment will be issued." (*Id*.).

## IV. **Exhaustion of Administrative Remedies**

### A. **Legal Standards**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an

inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y.

Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* at § 701.8.

At the same time that the Second Circuit decided *Giano*, it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[5] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311–12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion

---

[5] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry in recent cases. *See, e.g.*, *Heyliger v. Gebler*, No. 14-4092-pr, __ F. App'x __, 2015 WL 5616288, at *1-2 (2d Cir. Sept. 25, 2015) (applying the *Hemphill* analysis without further discussion); *Amador v. Andrews*, 655 F.3d 89, 102-103 (2d Cir. 2011) (declining to reach the issue, but noting that even under "pre-*Woodford* caselaw" the plaintiff had failed to establish either that defendants were estopped from asserting the defense or that special circumstances excused exhaustion); *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011).[6]  As discussed below, this court finds that plaintiff has not shown that the exhaustion requirement should be excused, and thus, plaintiff's case should be dismissed.

**B.    Application**

Defendants argue that plaintiff failed to exhaust his administrative remedies.

---

[6] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have *not* been overruled in that respect.  In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)) (Breyer, J. concurring).  Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis added).  This statement implies that there are still exceptions that a court may consider.

Defendants have filed the declaration of Jeffrey Hale, the Assistant Director of the Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP"). (Dkt. No. 307-11, Hale Decl.). Mr. Hale is the custodian of records maintained by the CORC. (Hale Decl. ¶ 2). Mr. Hale has attached a computer print-out from the CORC database reflecting the results of a search of plaintiff's grievance appeals between April of 2009 and March of 2015. (Dkt. No. 307-12, Hale Decl. Ex. A). Although plaintiff filed 77 appeals to CORC prior to December 20, 2012, and seven appeals of grievances after December 20, 2012, none of them concern the claims that are the subject of this motion for summary judgment. (Hale Decl. ¶ 9 & Ex. A). Specifically, Mr. Hale found that "Plaintiff never filed an appeal of a grievance relating to Officer P. Williams inciting Inmate Alston to attack Plaintiff on December 20, 2012 or December 21, 2012"; "Plaintiff never filed an appeal of a grievance relating to the failure to provide adequate medical care with respect to injuries he allegedly suffered on December 20, 2012 and/or December 21, 2012"; "Plaintiff never filed an appeal of a grievance relating to Nurse Practitioner Lashway's alleged failure to provide adequate medical care for Plaintiff's alleged ganglion cyst"; and "Plaintiff never filed an appeal of a grievance after his altercation with Inmate Alston on December 20, 2012 and December 21, 2012 regarding the failure to protect Plaintiff from Inmate Alston or the failure to place Plaintiff in protective custody prior to December 20, 2012." (Hale Decl. ¶¶ 10-13). This court's review of the printout of plaintiff's CORC appeals supports Mr. Hale's findings. (Hale Decl. Ex. A).

Defendants have also filed the declaration of Scott Woodward, an Inmate

Grievance Program ("IGP") Supervisor at Upstate. (Dkt. No. 307-9, Woodward Decl.).

Mr. Woodward supervises the Upstate IGP and maintains the grievance records at the

facility. (Woodward Decl. ¶ 2). Mr. Woodward states that he searched the IGP files for

grievances that plaintiff filed at Upstate. (Woodward Decl. ¶ 4). Although plaintiff

filed 116 grievances prior to December 20, 2012, and 12 grievances in 2013 while at

Upstate, plaintiff did not file any grievances related to the claims that are the subject of

this summary judgment motion. (Woodward Decl. ¶¶ 9-13). Again, this court's

review of the printout of plaintiff's grievances supports Mr. Woodward's findings.

(Woodward Decl. Ex. A).

Plaintiff filed this action on December 28, 2015, only seven days after the attacks

by Alston and the alleged denial of medical care for his injuries. Even if plaintiff had

submitted a grievance related to defendant Williams' alleged statements to inmate

Alston, the alleged failure to protect, and the inadequate medical attention to his

injuries from the fight after the incident, there would have been no time to allow the

administrative grievance process to run its course. Thus, plaintiff clearly filed his

federal complaint prematurely as to the incidents of December 20-21, 2012, before he

could possibly have completed all of the steps necessary to exhaust his administrative

remedies.

Plaintiff concedes that he "immediately placed a federal lawsuit" with respect to

the events of December 20-21, 2012, without following the administrative grievance

process, but is unsure whether he had filed a grievance regarding treatment of his

ganglion cyst. (Dep. at 146-47). As to all claims, plaintiff offers a variety of alleged

special circumstances to justify his failure to satisfy the grievance requirements. In his complaint, plaintiff alleged that he was being threatened by guards and other inmates in order to prevent him from seeking assistance in the grievance process. (Compl. at 2). During his deposition, plaintiff claimed that he did not have any grievance rights and was advised in a November 16, 2012 letter "by executive personnel of the commission on corrections that I have thoroughly exhausted all of my institutional remedies at the facility level and at the Albany DOCCS level, and they encouraged me to seek an attorney." (Dep. at 147). Finally, plaintiff argues that he had submitted multiple grievances during his imprisonment alleging threats by Upstate staff and unidentified inmates, and had multiple discussions with DOCCS officials, so that he already exhausted all necessary grievance requirements related to his claims. (Dep. at 150). None of plaintiff's arguments are persuasive.

The failure of an inmate to file an internal grievance may be excused where the inmate establishes that he was threatened, and that the threat was "sufficient to render grievance procedures unavailable." *Snyder v. Whittier*, 428 F. App'x at 91. Whether a threat was sufficient to render grievance procedures unavailable involves an objective inquiry as to whether "a similarly situated individual of ordinary firmness would have deemed [the procedure] [un]available." *Carlson v. Parry*, No. 06-CV-6621, 2013 WL 5354517, at *9-10 (W.D.N.Y. Sept. 24, 2013) (quoting *Hemphill v. New York*, 380 F.3d at 688) (alterations in original). In his response to the motion for summary judgment, plaintiff has offered no proof that any party threatened him in order to prevent him from filing a grievance, and instead lists only a history of complaints and suspicions about

Upstate personnel and the "unknowable mix" of inmates housed at Upstate. (*See, e.g.,* Dkt No. 351-1 at 10, 18-30; Dkt. No. 351-4). Such generalized fears of future retaliation are not sufficient to excuse a failure to exhaust administrative remedies. *Harrison v. Stallone*, No. 9:06-CV-902, 2007 WL 2789473, at *6 (N.D.N.Y. Sept. 24, 2007); *Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009). Plaintiff's argument that the grievance process was made unavailable to him by threats or intimidation is further contradicted by the more than one hundred grievances that he filed while at Upstate, before and after December 20, 2012.[7] (Woodward Decl. Ex. A).

In addition, plaintiff's alleged reliance upon the November 16, 2012 correspondence from the New York State Commission of Correction ("Commission") does not excuse his failure to exhaust the administrative grievance process. As explained by defendants, the Commission is a separate agency from DOCCS and has no regular function with regard to DOCCS' inmate grievance program. (Dkt. No. 307-13, Callahan Decl. at ¶ 4). Therefore, the Commission could not excuse plaintiff from the grievance process. A review of plaintiff's exhibits demonstrates that his exchange of correspondence with the Commission was an attempt to circumvent the DOCCS grievance process due to plaintiff's mistrust of DOCCS officials and frustration at the lack of success of prior grievances. (Dkt. No. 307-14, Callahan Decl. Ex. A at 2; Dkt. No. 307-16, Callahan Decl. Ex. C). Plaintiff submitted similar letters to the New York State Police, the New York State Office of the Inspector General, the New York State

---

[7] Plaintiff has confirmed that he was very familiar with the grievance process at Upstate. (Dep. 148-49; Dkt No. 351-9 at 7-11).

Attorney General's Office, the New York State Department of Civil Service, and the Franklin County District Attorney's Office. (Dkt. No. 351-13 at 42-43, 45, 49; Dkt. No. 351-16 at 9; Dkt. No. 351-18 at 16-19, 45). Such correspondence does not excuse non-compliance with the DOCCS grievance requirements, particularly where plaintiff is familiar with the administrative requirements. *McCloud v. Tureglio*, No. 09:07-CV-650 (NAM/GHL), 2008 WL 1772305, at *15 (N.D.N.Y. April 15, 2008) (complaint letters to prison officials did not satisfy exhaustion of grievance process); *Hall v. Bradley*, No. 12-CV-6202, 2015 WL 3964897, at *5 (W.D.N.Y. June 29, 2015) (neither letters to other DOCCS officials, nor conversations with prison officials about the incident satisfy the exhaustion requirement). In fact, plaintiff has included a significant amount of responsive correspondence from DOCCS and other entities which advised plaintiff that his issues had to be addressed through the grievance system at Upstate. (*See, e.g.,* Dkt No. 351-14 at 7, 10; 351-18 at 44-45).

Finally, plaintiff argues that his long history of grievances expressing concerns for his personal safety and treatment by Upstate personnel raised identical claims as those set forth in his complaint. (Dkt. No. 351 at 12). In support of his argument, plaintiff cites *Johnson v. Killian*, 680 F.3d 234, 238-39 (2d Cir. 2012). In *Johnson*, the Second Circuit held that plaintiff had exhausted his administrative remedies when he filed, and exhausted, a grievance in 2005 challenging the facility's prayer polices. *Id.* at 236-237. After Johnson filed his grievance, the facility ceased enforcing the relevant policy. *Id.* at 237. In 2007, a new warden was appointed, and the challenged policy was reimplemented and consistently enforced. *Id.* Plaintiff filed a complaint without

exhausting his administrative remedies regarding the re-implementation of the challenged policy. *Id.* The court held that plaintiff sufficiently complied with the exhaustion requirement by challenging the identical policy in 2005, notwithstanding a "different set of circumstances" in 2007. *Id.* at 238-39. The court held that "the issue that Johnson would have raised in 2007 – the inadequacy of the spaces and times allotted for congregational prayer – was *identical* to the issue he exhausted in 2007." *Id.* at 239.

*Johnson* is distinguishable from this action. In *Johnson*, the plaintiff had already exhausted his remedies regarding the same policy, and the substantive issues would have been the same. This action involves specific allegations related to the assignment of inmate Alston to plaintiff's cell and specific instances of the alleged denial of medical care. which plaintiff did not exhaust. The fact that plaintiff has previously raised generalized personal safety concerns regarding unidentified inmates or medical care claims does not excuse him from exhausting all future claims that raise similar issues. Accordingly, this court finds that there are no special circumstances excusing plaintiff's failure to exhaust, and therefore, all claims in this action must be dismissed against all remaining defendants. [8]

---

[8] Such dismissal would include the two John Doe defendants, who were never identified or served with process in this proceeding. Plaintiff asserted claims against John Doe No. 1 for medical indifference and a failure to protect claim against Doe Director of Classification and Movement. In his May 10, 2013 Decision and Order, Judge Sharpe warned that if plaintiff failed to ascertain the identity of any Doe defendant so as to permit timely service of process, these actions would be dismissed as against those individuals. (Dkt. No. 22 at 26). Discovery closed in this case on November 5, 2014, and plaintiff did not move to amend his complaint.

## IV.    Alternate Grounds for Summary Judgment

In their motion and response papers, counsel for defendants and the pro se plaintiff have extensively briefed the substantive arguments related to plaintiff's Eighth Amendment claims for failure to protect and medical indifference. Based upon a review of these arguments, including all of plaintiff's exhibits and video evidence, this court would still recommend summary judgment for defendants on the merits of these claims even if plaintiff had exhausted his administrative remedies, for the reasons set forth below.

### A.    Legal Standards

#### 1.    Personal Involvement/Respondeat Superior

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she

were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.  See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases).  However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.*  In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id*. (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### 2.    **Failure to Protect**

In order to establish an Eighth Amendment claim for failure to protect, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, ***and*** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm

18

to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. *Id.*

The failure of corrections officers to employ reasonable measures to protect an inmate from violence by other inmates may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (citing *United States v. Bailey*, 444 U.S. 394, 423 (1980)). "Reckless disregard" of plaintiff's right to be free from attacks by other inmates may be shown by the existence of "a pervasive risk of harm to inmates from other prisoners and a failure by prison officials to reasonably respond to that risk." *Knowles v. New York City Dep't of Corr.*, 904 F. Supp. 217, 221-22 (S.D.N.Y. 1995) (citing *Rucco v. Howard*, No. 91 Civ. 6762, 1993 WL 299296, at *4 (S.D.N.Y. Aug. 4, 1993); *Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984)).

An isolated omission by corrections officers generally does not support a claim for deliberate indifference absent circumstances involving evil intent, recklessness, or deliberate indifference. *Coronado v. Goord*, 99 Civ. 1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (citing *Ayers v. Coughlin*, 780 F.2d at 209). Plaintiff may allege a constitutional claim by alleging that the substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and that the officials being sued were exposed to information concerning the risk and thus, must have known about it. *Id.* (citing *Farmer*, 511 U.S. at 842-43).

### 3.   Denial of Medical Care

In order to state a claim based on constitutionally inadequate medical treatment,

the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing, *inter alia*, *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'" *Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id.* at 185. The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto*, 248 F. App'x at 236 (citing, *inter alia*, *Chance v. Armstrong*

143 F.3d at 702).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id.* at 835, 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer v. Brennan*, 511 U.S. at 844. Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* v. *Goord,* 467 F.3d at 281.

### B. Application

#### 1. Respondeat Superior

During his deposition, plaintiff testified that he named former DOCCS Commissioner Fischer as a defendant because Fischer was "not permitted to let a facility run amok," and "[w]hat Fischer failed to do was oversee each subordinate's actions in regard to investigating my complaints and ascertaining any discrepancies within their investigatory reports." (Dep. at 155). Plaintiff made similar claims that

Bellnier, Uhler, Rock, and Zerniak failed to adequately investigate or oversee his prior expressed concerns about his safety and the potential assignment of mentally ill, violent, or gang affiliated inmates as future cellmates. (Dep. at 157-66). This court has reviewed plaintiff's extensive pleadings in response to this motion, and beyond his generalized concerns about supervisors' responsiveness to his concerns, plaintiff has not alleged any knowledge or involvement of these defendants in the incidents of December 20-21, 2012.

Plaintiff's medical indifference claims against defendants Fischer, Bellnier, Uhler, Rock, and Zerniak were dismissed by Judge Sharpe in May 2013 because plaintiff merely offered conclusory allegations that these supervisory officials were deliberately indifferent to the training and supervision of their subordinates. (Dkt. No. 22 at 21). Upon the completion of discovery, plaintiff's failure to protect claims suffer from the identical defect. Therefore, even if plaintiff had exhausted the administrative grievance process, summary judgment for lack of personal involvement would be appropriate as to these defendants.

## 2.  Failure to Protect

The record, including exhibits submitted by plaintiff in opposition to the summary judgment motion, show that plaintiff submitted several requests for protective custody and a single cell due to alleged threats from unidentified inmates. In response to those requests, plaintiff was interviewed multiple times, including by defendants Greenizen, Phillips and Oey, regarding his safety concerns. (Dep. at 61). Plaintiff has also alleged numerous discussions with defendants Williams, Sisto and Debyah

regarding the same concerns.  (Compl. at 9, 12; Dkt No. 351-1 at 33; Dkt No. 351-8 at 17).  Defendants have noted that defendants Greenizen, Phillips, Oey, Williams, Sisto and Debyah had no input on the decision to deny plaintiff protective custody.  (Dkt. No. 307-18, Bishop Decl. ¶ 18).  This court will read plaintiff's complaint in the most favorable light and assume that his argument is that these defendants could have intervened with regard to defendant Alston, or otherwise prevented the attacks on December 20-21, 2012.  Even with this deference, summary judgment for these defendants, other than defendant Williams,[9] would be appropriate (had plaintiff exhausted the administrative grievance process) because plaintiff does not offer any reasons why these defendants would have known that Alston was a threat to plaintiff's safety until after he attacked plaintiff.

In all of these discussions with Upstate staff regarding his security concerns, plaintiff could offer no specifics beyond allegations that unidentified inmates were harassing plaintiff because he signed a confession that implicated his co-defendant. When interviewed, plaintiff did not name any other witnesses to this harassment, and could not offer any identifying traits except that some of the inmates were using gang terminology associated with the Bloods, and his belief that those yelling in Spanish were likely members of the Latin Kings gang. (Dkt. No. 307-21, Bishop Decl. Ex. C). Plaintiff had no gang affiliation himself, but believed that gang members were most

---

[9] Defendant Williams moved for summary judgment only on exhaustion grounds with regard to the Eighth Amendment claim relating to the attack on plaintiff by inmate Alston on December 20, 2012.  Therefore, this court will not address the substantive merits of plaintiff's Eighth Amendment claims against defendant Williams.

likely to become violent toward inmates believed to be informants. (Dep. at 8, 35). During his deposition, plaintiff admitted that he had "no particular idea" what specific inmates threatened him. (Dep. at 31).

Plaintiff stated that Alston was recently transferred to Upstate, and admits that he had never met inmate Alston prior to December 20, 2012. (Dep. at 96). During his deposition, plaintiff testified that even after the first attack on December 20, 2012, he did not report the problems with Alston to anyone. When defendant Sisto made lunch rounds, inmate Alston went to the cell door to collect both meals and plaintiff stayed in the back of the cell. (Dep. at 109). Plaintiff testified that he yelled to Sisto, "Yo I need to get out of this cell. We just had a cell fight." (Dep. at 91). Sisto did not respond, so there is no evidence that he even heard plaintiff's call from the back of the cell, let alone that Sisto knew of and disregarded an excessive risk to plaintiff's safety. Plaintiff's belief that defendant Sisto "anticipated that a fight would occur" is insufficient to support his Eighth Amendment claim. (Dep. at 87). Plaintiff cannot recall any discussions with any of the other defendants regarding the first attack, and admitted that he intentionally avoided saying anything to defendant Williams regarding Alston. (Dep. at 91, 98).

Alston's second attack occurred during breakfast rounds on December 21, 2012, and plaintiff admits that defendant Sisto immediately intervened. (Compl. at 11, Dep. at 108). Four or five other officers arrived and removed plaintiff from the cell, but plaintiff cannot identify whether any of the defendants were present. (Dep. at 117-18). After receiving medical care, plaintiff was put in a different cell separate from inmate

Alston. (Dep. at 132).

There is no evidence that any defendants (other than, perhaps, defendant Williams) had actual knowledge that inmate Alston, or any identifiable inmate, presented a risk of harm to plaintiff. Thus, even if plaintiff had exhausted his administrative remedies, dismissal of plaintiff's Eighth Amendment failure to protect claims against these defendants would be appropriate.

### 3. Denial of Medical Care

#### a. Injuries from Alston Attacks

Plaintiff alleges that defendant Marlow denied him medical care immediately after the December 21, 2012 attack by Alston. He also alleges that defendants Mullen and Rushford denied him medical care in the days following the attack. However, this court finds summary judgment on these claims would still be appropriate even if plaintiff had exhausted the administrative grievance process, because plaintiff cannot prove that these defendants were deliberately indifferent to plaintiff's serious medical needs.

Plaintiff claims that he suffered injuries in the attack to his right eye and ribs, was coughing and spitting up blood, and suffered cuts to his face. (Compl. at 11). He also alleged pain in his chest in the days after the attack. (Compl. at 13). These types of minor, temporary injuries have been held not to constitute serious medical needs as a matter of law. For example, in *Bradley v. Rell*, 703 F. Supp. 2d 109 (N.D.N.Y. 2010), the court held that plaintiff's allegations that he suffered a headache and blurry vision, swelling and bruising around his head, and an abrasion to his right lower leg, extreme

headaches, and psychological problems, were insufficient for a rational fact finder to conclude that his injuries were sufficiently serious to constitute a serious medical need. *Id.* at 121-22 (collecting cases); *see also Lewis v. Havernack*, No. 12-CV-31 (GLS/DEP), 2013 WL 1294606, at *9 (N.D.N.Y. Jan 23, 2013) (Rep't- Rec.) (holding that injuries to plaintiff's upper cheeks and lower eyelid resulting from being punched just once are "minor injuries, which are not sufficiently serious to state a deliberate indifference claim under the Eighth Amendment) (collecting cases), *adopted*, 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013); *Sledge v. Fein*, 11 Civ. 7450, 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012) (noting that courts have "held that terrible and extreme headaches and swelling do not satisfy the objective component of an Eighth Amendment claim"); *Latouche v. Tompkins*, No. 09-CV-308 (NAM/RFT), 2011 WL 1103022, at *14 (N.D.N.Y. Mar. 4, 2011) (Rep't-Rec.) (finding that a 4-5 centimeter bruise, a 2-3 centimeter cut, and a scratch on plaintiff's face and pain from a bump on the right and left sides of his face are not objectively sufficiently serious to support a claim of medical indifference), *adopted*, 2011 WL 1103045 (N.D.N.Y. Mar. 23, 2011); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 44-45 (N.D.N.Y. 2009) (holding that two black eyes, bruising in kidney area, kick marks and open lacerations on knees, bruising and red spots on thigh, lacerations on arms and wrists, a headache, and numbness in hands and fingers are not "conditions of urgency that may produce death, degeneration, or extreme pain") (collecting cases); *Jones v. Furman*, No. 02-CV-939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar. 21, 2007) (explaining that soreness, pain in and a lump behind ear, lump on back of head, abrasions on nose and knuckle, and bruising to back,

ribs and legs do not constitute a serious medical condition); *Hickey v. City of New York*, 01-CV-6506, 2004 WL 2724079, at *16 (S.D.N.Y. Nov. 29, 2004) (holding that cuts and bruises do not constitute sufficiently serious medical needs); *Rodriguez v. Mercado*, 00-CV-8588, 2002 WL1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (finding that bruises to plaintiff's head, back and wrists, accompanied by back pain and migraines but no loss of consciousness did not constitute a medical condition that was sufficiently serious for purposes of the Eighth Amendment).

Even if plaintiff's injuries were sufficiently serious to support his Eighth Amendment claim, plaintiff has failed to establish that defendants Marlow, Mullen or Rushford exhibited deliberate indifference to his medical needs. Defendant Marlow examined plaintiff shortly after the December 21, 2012 attack and found no evidence of injuries. (Dkt. No. 307-23, Smith Decl., Ex. A ¶ 11,). Plaintiff's belief that Marlow should have referred him to a doctor, examined him for a concussion, and provided "ice packs, gels, peroxide, Bacitracin ointment, pain medication . . . x-rays if necessary" (Dep. at 125) amounts to a dispute over the appropriate treatment, and does not state an Eighth Amendment claim. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986); *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).

Plaintiff admits that after being returned to a cell, he threatened suicide as a "ruse" to avoiding having another cellmate. (Dep. at 133; Dkt. No. 351-1, at 33). This threat resulted in three days in the infirmary, where plaintiff was monitored by medical staff, including he believes, defendants Rushford and Mullen. (Dep. at 134). Despite

plaintiff's insistence that he received no treatment for lingering injuries from the December 20-21, 2012 attacks, plaintiff's medical records show that he received regular medical examinations and treatment, including pain medication, between December 21, 2012 and March 25, 2013. (Dkt. No. 307-22, Smith Decl. ¶ 9-71). Plaintiff also received rib and chest x-rays on January 14, 2013 and spinal x-rays on March 4, 2013 in response to his sick call requests. (Smith Decl.¶ 61, 72 ). These x-rays did not show any evidence of fractures or other abnormalities. (*Id*.).[10]

### b. Ganglion Cyst

Separately, plaintiff alleges that defendant Lashway failed to provide him medical treatment for more than two years for a "very very painful" ganglion cyst on his right wrist, that developed because plaintiff had "been writing nonstop" since being transferred to Upstate in January 2009. (Compl. at 6; Dep. at 138). Plaintiff testified that he suffered pain and numbness due to the cyst whenever he wrote more than two pages a day. (Dep. at 147). Plaintiff's medical records show that multiple medical

---

[10] In light of the contradictory evidence from DOCCS medical records, no reasonable fact finder would credit plaintiff's unsupported denial that he did not receive this medical treatment. *See, e.g., Lewis v. Johnson*, No. 9:08-CV-482 (TJM/ATB), 2010 WL 3785771, at *19 (N.D.N.Y. Aug. 5, 2010) (Rep't-Rec.), *adopted*, 2010 WL 3762016 (N.D.N.Y. Sept. 20, 2010) (plaintiff's conclusory allegations about his denials of medical care would not create an issue of fact given the contradictory records of examinations on several occasions by different providers who found little evidence of the medical problems about which plaintiff complained); *Brown v. White*, 9:08-CV-200 (GLS/ATB), 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) (plaintiff's conclusory suggestion that defendant nurse completely refused to provide any medical attention on a particular date is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record). *See also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Jeffreys v. City of New York*, 426 F.3d at 554 (quoted above).

professionals examined the ganglion cyst and none found that it presented a "condition of urgency" which could result in either "degeneration" or "extreme pain." (Dkt. No. 307-24, Smith Decl. Ex. B). *See Collins v. Artus*, No. 9:08-CV-470 (TJM/DEP), 2009 WL 606176, at *5 (N.D.N.Y. March 9, 2009) (concluding that ganglion cyst was not a serious medical condition). However, in light of plaintiff's pro se status, his allegation that the cyst caused him extreme pain during the relevant period would have "effectively raised a disputed issue of fact, albeit a tenuous one" as to the objective prong of the deliberate medical indifference analysis. *Benjamin v. Galeno*, 415 F. Supp. 254, 259 (S.D.N.Y. 2005).

Even with this deference accorded the plaintiff, summary judgment for defendant Lashway would still be appropriate, had plaintiff exhausted the administrative grievance process, because plaintiff has failed to raise an issue of fact as to whether the nurse practitioner knew of and consciously disregarded an excessive risk to plaintiff's health. Plaintiff's medical records show that defendant Lashway examined plaintiff's right wrist and diagnosed the ganglion cyst on at least three occasions between February 1, 2012 and August 1, 2012. (Smith Decl. ¶ 76-88). Due to plaintiff's repeated complaints of wrist pain, defendant Lashway recommended that plaintiff be referred to a general surgeon for a consultation, and submitted a formal request for consultation on August 1, 2012. (Smith Decl. Ex. B at 8-10). This request was denied on August 8, 2012 by the regional medical director and APS, an independent contractor who reviews DOCCS medical referrals, because the cyst was considered cosmetic and not a medical necessity. (Smith Decl. ¶ 87 & Ex. B at 11-13). Defendant Lashway was

29

not involved in that determination, and plaintiff has not identified any additional steps that she could have taken with regard to the cyst.[11]

Consistent with the analysis above, even if plaintiff had exhausted his administrative remedies, this court would still recommend dismissal of plaintiff's denial of medical care claims as to all defendants.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 307) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY AS TO ALL REMAINING DEFENDANTS**; and it is further

**ORDERED**, that plaintiff's request for additional discovery (Dkt. No. 351) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R.

---

[11] *See, e.g.*, *Young v. Smith*, 07-CV-6312, 2009 WL 3733048 at *5, (W.D.N.Y. Nov. 5, 2009) (emergency room doctor, who referred plaintiff to surgeon promptly, could not be held liable for any delay by the surgeon in performing surgery); *Gillespie v. New York State Dept. of Correctional Services*, 9:08-CV-1339 (TJM/ATB), 2010 WL 1006634, at *6 & n.11 (N.D.N.Y. Feb. 22, 2010) (Nurse-Administrator who deferred to or confirmed the treatment decisions of the primary doctor was not deliberately indifferent) (citing cases) (Report-Recommendation), *adopted*, 2010 WL 1006643 (N.D.N.Y. Mar 19, 2010).

Civ. P. 6(a), 6(e), 72.


**Dated:  January 11, 2016**

Hon. Andrew T. Baxter
U.S.  Magistrate Judge